# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

_____
CAMBRIDGE CHRISTIAN SCHOOL, INC. )
                                        )

                Plaintiff,       )     Case No. 8:16-cv-02753-CEH-AAS

                                          )

v.                                     )

                                        )

FLORIDA HIGH SCHOOL ATHLETIC    )
ASSOCIATION, INC.                    )

                                        )

                Defendant.      )
_____ )

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S VERIFIED AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF <u>AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT</u>

    Defendant, Florida High School Athletic Association, Inc. ("FHSAA"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), moves to dismiss Plaintiff's Verified Amended Complaint For Declaratory and Injunctive Relief and Incorporated Memorandum of Law in Support Doc. 8. For the reasons set forth in detail below, the Court should dismiss Plaintiff's Amended Complaint.

## <u>INTRODUCTION</u>

    This is an action brought by a parochial school seeking to force a state actor's unconstitutional help in communicating sectarian religious messages to captive audiences at public events. Contrary to the Amended Complaint's allegations, the First Amendment of the U.S. Constitution, the Florida Constitution, and Florida Statutes Section 761.03 do not compel the enlistment of state actors, like FHSAA, to engage in proselytization of audience members attending state-sponsored sporting events.

Indeed, as the Amended Complaint makes clear, FHSAA has not denied the school's athletic program the ability to express itself through prayer among themselves prior, during, or following the game, either in the locker room or outside on the athletic field. FHSAA also has not banned the school's athletes and supporters from saying anything they wish to anyone they speak with, or from displaying any signage they wish to bring with them.

But the law does not require—and for good and valid reason does not permit—the FHSAA to promote sectarian prayer through state-run public address systems. For these reasons, as more fully explained below, the Court should dismiss the Amended Complaint with prejudice.

## FACTUAL BACKGROUND[1]

FHSAA is a state actor and statutorily recognized as the official governing body for interscholastic athletics in Florida. Am. Compl., Doc. 8, ¶ 20. FHSAA has an official and published neutral administrative procedure which governs the use of the public-address system at all FHSAA-sponsored events. FHSAA Admin. Proc. § 3.1.8, Ex. A to Am. Compl., Doc. 8-1, pp. 14–15. The administrative procedure, titled "Public-Address Protocol," sets forth the parameters that the public-address announcer must follow—FHSAA does not provide open access to the public-address system to any private person. *Id.* The Public-Address Protocol specifically states that the public-address announcer is considered a bench official for all Florida High School State Championship Series events. *Id.* at p. 14. The Public-Address Protocol specifically states that the public-address announcer "shall maintain

---

[1] FHSAA relays the facts as set forth in Plaintiff's Amended Complaint as district courts must accept all well-pleaded allegations within the complaint as true. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

complete neutrality at all times" and "will follow the FHSAA script for promotional announcements." *Id*. FHSAA provides a script for promotional announcements for sponsors. *Id*. The Public-Address Protocol even specifically delineates what announcements are allowed and not allowed to be broadcast over the public-address system. *Id.* at pp. 14–15. Examples of announcements allowed include "those of an emergency" or "'practical' nature," "starting lineups or entire lineups of both participating teams," "messages provided by host school management," and "substitutions and timeouts." *Id*. Examples of announcements not allowed include "play-by-play," "color commentary," "any comment that would offer either competing team an unfair advantage in the contest," and "any comment critical of any school, team, player, coach or official." *Id*. at p. 15.

Currently, FHSAA has a total of over 800 member schools. Doc. 8, ¶ 21. During the 2015 regular season, Cambridge Christian qualified to play in the Division 2A Championship Game (the "Championship Game") administered by FHSAA and hosted at Camping World Stadium (formerly known as the Citrus Bowl) (the "Stadium") against University Christian School ("University Christian"). *Id.* ¶ 2. During a December 1, 2015 planning call, representatives from Cambridge Christian and University Christian asked a representative from FHSAA to use the loudspeaker at the Stadium to lead a prayer. *Id.* ¶ 38. FHSAA denied the two schools' request. *Id.* ¶ 39.

The following day, in an email dated December 2, 2015, Tim Euler, Head of School for Cambridge Christian, sent an email to Dr. Dearing, again requesting permission to deliver a prayer over the Stadium's loudspeaker at the Championship Game. *Id.* ¶ 41. Heath Nivens, Head of School of University Christian, sent a similar email to Dr. Dearing to join in the

request. *Id.* ¶ 42. Later that day, Dr. Dearing informed Mr. Euler and Mr. Nivens that their request to pray over the Stadium's loudspeaker was being denied due to the fact that the FHSAA was a state-actor and thus, could not entangle itself in Cambridge Christian's request to broadcast a prayer. *Id.* ¶ 43. Mr. Nivens then responded, "Thank you for the thought and consideration you and your team placed into the decision. The last thing either of our schools wish to do is bring a violation to the FHSAA. While I do not like the decision, I do understand it, respect it and appreciate the timely communication. Thank you!" *See* Ex. E to Am. Compl., Doc. 8-6, p. 3.

On December 4, 2015, Cambridge Christian played University Christian in the Championship Game at the Stadium. Doc. 8, ¶ 45. The two teams, including players, coaches, and cheerleaders, prayed together at mid-field. *Id.* ¶ 50. Thus, Cambridge Christian acknowledges that FHSAA did not prevent them from engaging in their pre-game prayer.

Under the terms of the neutral Public-Address Protocol, the public-address announcer is the only one making statements and providing announcements over the public-address system and the system is not turned over to any school official or student. Doc. 8-1, pp. 14–15. FHSAA has **no policy or procedure** prohibiting anyone from engaging in prayer prior, during, or following its events, either in the locker room or outside on the athletic field. The incident of which Cambridge Christian now complains resulted from a decision made by Dr. Dearing, who was following FHSAA's Public-Address Protocol, and FHSAA's obligations under the First Amendment.

Cambridge Christian's seven-count Amended Complaint purports to state a claim pursuant to 42 U.S.C. § 1983 for an alleged violation of the First Amendment of the

Constitution (Count I). It also seeks a declaratory judgment as to the Free Speech and Free Exercise Clauses (Count II) and as to the Establishment Clause of the First Amendment (Count III). Additionally, it alleges a violation of Article 1, Sections 3 and 4 of the Florida Constitution (Count IV). It also seeks a declaratory judgment as to the Free Speech and Free Exercise portion of the Florida Constitution (Count V) and the Establishment portion of the Florida Constitution (Count VI). Lastly, it alleges a claim for violation of Florida's Religious Freedom Restoration Act, Florida Statute § 761.03 (Count VII).

None of these counts state a claim because Cambridge Christian cannot establish that its rights have been violated under the federal constitution, the state constitution, or state law. FHSAA acted in accordance with its neutral administrative procedures, and in compliance with its obligations under the First Amendment in declining to turn over the public-address system at a state sponsored Division 2A championship football game to Cambridge Christian to broadcast a prayer. No rights were denied to Cambridge Christian and it was not prohibited from engaging in prayer—in fact Cambridge Christian admits that it participated in a joint prayer on the field prior to the football game. Not only has Cambridge Christian failed to state a claim, but it also lacks standing because none of its members suffered an injury-in-fact. Thus, Cambridge Christian's Amended Complaint and this action should be dismissed with prejudice.

**ARGUMENT AND MEMORANDUM OF LAW**

    **I.**    **Cambridge Christian does not have standing to maintain this lawsuit.**

Cambridge Christian lacks standing to bring this lawsuit as none of its members has pleaded, or can establish, the requisite injury for the corporate entity to sue. Standing is a

fundamental component of a federal court's subject matter jurisdiction. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013). Challenges to standing therefore attack the court's subject matter jurisdiction to adjudicate the parties' dispute. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam). Attacks on standing come in two forms: facial and factual. *Id.* Whereas a facial attack is limited to the face of the complaint and exhibits to determine whether the plaintiff sufficiently alleges standing, (*id.* at 1232–33), a factual attack contests the plaintiff's standing in fact, regardless of what the complaint says. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). When confronting a factual attack, the court affords no presumption of truth to the complaint and may consider matters outside of its allegations and exhibits, such as affidavits, testimony, and other evidence. *Id.* The party invoking a federal court's subject matter jurisdiction bears the burden of establishing standing for each claim he or she asserts. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

A corporate entity can maintain a civil rights action: "(1) to protect the rights of its members; or (2) to protect its own rights as a corporate institution." *White's Place, Inc. v. Glover*, 222 F.3d 1327, 1328 (11th Cir. 2000). A corporation will only have standing to protect the rights of its members "when its members could otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. at 181. A member lacks standing if he or she cannot satisfy the requirements under Article III's traditional standing requirements, *White's*

*Place*, 222 F.3d at 1329, which require a member to establish three elements: (1) he has suffered or is imminently threatened with a concrete and particularized injury-in-fact, (2) his injury was or will be caused by the action he challenges, and (3) it is likely, as opposed to merely speculative, that the injury he faces will be redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, Cambridge Christian cannot establish that any one of its members has standing to sue in their own right because none of its members can establish there was an injury to their First Amendment rights or rights under Florida law. Cambridge Christian asserts that its Free Speech and Free Exercise rights under the First Amendment and rights under Florida law were violated when FHSAA denied its request to conduct a prayer over the stadium's public-address system at a state-sponsored sporting event. However, none of Cambridge Christian's members were harmed by FHSAA's decision to not allow Cambridge Christian to use the public-address system at an FHSAA-sponsored championship game because its members were allowed to pray—a fact which Cambridge Christian acknowledges in its Amended Complaint. Doc. 8, ¶ 50 ("Immediately prior to the start of the game, the two teams met at the 50-yard line to pray together as a sign of fellowship."). Thus, FHSAA's denial of the use of the Stadium's public-address system at the state-sponsored Championship Game did not violate any of Cambridge Christian's members' First Amendment rights or rights under Florida law.[2]

---

[2] Rather, if the FHSAA had allowed such a practice, it would have violated the Establishment Clause of the Constitution as described in detail in section II.A.

Consequently, because Cambridge Christian cannot demonstrate that any one of its members' First Amendment rights or rights under Florida law were violated by FHSAA, it does not have standing to bring this lawsuit.

## II. Cambridge Christian does not state claims for relief in its Amended Complaint.

Claims that are not plausible on their face cannot survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where a plaintiff's allegations of fact are insufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the complaint must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of the elements of a claim is not enough and the district court need not give any credence to legal conclusions that are not supported by sufficient factual material. *Id.*

### A. Federal Constitutional Claims

#### 1. The Establishment Clause of the First Amendment precludes the First Amendment claims brought by Cambridge Christian.

As to Counts I through III, Cambridge Christian cannot state a claim for relief because it cannot establish that its rights have been violated under the First Amendment. Indeed the Establishment Clause of the First Amendment precludes the relief it seeks. *Santa Fe*, 530 U.S. at 302 (holding school district's policy permitting prayer at football games violated the Establishment Clause of the First Amendment); *Jager*, 862 F.2d at 830 (holding school district's practice of having religious invocations at football games violated the Establishment Clause).

The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging

the freedom of speech . . . ." U.S. Const. amend. I. The First Amendment is incorporated through the Due Process Clause of the Fourteenth Amendment and applies to state-created entities. *Hollomon ex rel. Holloman v. Harland*, 370 F.3d 1252, 1268 (11th Cir. 2004). Thus, states, and their actors, are required to "pursue a course of complete neutrality toward religion." *Wallace v. Jaffree*, 472 U.S. 38, 60 (1985).

Certainly, tensions exist between the Establishment Clause and Free Exercise Clauses. *S.D. v. St. Johns Cnty. Sch. Dist.*, 632 F. Supp. 2d 1085, 1091 (M.D. Fla. 2009). ("Yet, there exists a tension between the doctrines, when applied: government action to facilitate free exercise might be challenged as impermissible establishment, and government efforts to refrain from establishing religion might be objected to as denying the free-exercise of religion."). There is, however, "a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech, which the Free Speech and Free Exercise Clauses protect." *Santa Fe,* 530 U.S. at 302 (2000) (internal quotation marks omitted).

Here, FHSAA has a Public-Address Protocol that it implements and enforces for its state-sponsored events. Cambridge Christian seeks to have the Court force FHSAA to create and implement a policy allowing the broadcast of prayer at a state-sponsored championship football game. Such a policy would violate the Establishment Clause and the Court should reject Cambridge Christian's attempt to have the Court take such action.

Courts apply a three-pronged analysis to determine whether state action embodies the neutrality mandated by the Establishment Clause. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). First, the policy must have a secular purpose. *Id*. Second, its principal effect must be

one that neither advances nor inhibits religion. *Id*. Third, the policy must not foster an excessive state entanglement with religion. *Id*. A policy allowing an intrinsically religious practice, such as prayer, cannot meet the secular purpose prong of the *Lemon* test. *See Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 830 (11th Cir. 1989). Additionally, "[w]hen a religious invocation is given via a sound system controlled by [the state] and the religious invocation occurs at a [state]-sponsored event . . . the conclusion is inescapable that the religious invocation conveys a message that the [state] endorses the religious invocation." *Id*. at 831. When a state reviews and monitors the content of messages broadcasted, and that message includes prayer, it entangles itself with religion in violation of the Establishment Clause. *See id*. Ultimately, "whether certain conduct violates the Establishment or Free Exercise Clause is objective and based on a First Amendment analysis that is largely independent from individual feelings of indignity or personal affront." *S.D. v. St Johns Cnty. Sch. Dist.*, 632 F. Supp. 2d at 1092.

2. FHSAA's Public-Address Protocol embodies the neutrality mandated by the Establishment Clause.

FHSAA's Public-Address Protocol embodies the neutrality mandated by the Establishment Clause of the First Amendment. The Public-Address Protocol was created for a secular purpose, it neither advances nor inhibits religion, and it does not foster an excessive state entanglement with religion—in fact, it prevents such entanglement.

The Public-Address Protocol provides that the only authorized user of the public-address system is the public-address announcer, who, pursuant to the policy, is considered a bench official for all FHSAA Championship Series events. The Public-Address Protocol specifically delineates what announcements are allowed and not allowed to be broadcast over

the public-address system. Additionally, FHSAA provides a script for promotional announcements of sponsors to the public-address announcer. No one other than the public-address announcer makes announcements over the public-address system. FHSAA does not provide open access to the public-address system to any private person. Thus, FHSAA's Public-Address Protocol exemplifies the neutrality that is mandated by the Establishment Clause on state actors.

Neither FHSAA's Public-Address Protocol nor its enforcement equates to a violation of Cambridge Christian's right to exercise its religious freedom and free speech rights. Doc. 8, ¶¶ 64–71. The Public-Address Protocol is neutral. It does not contemplate turning the public-address system over to anyone for the purpose of giving their own messages. Cambridge Christian points to the use of the public-address system by both teams' cheerleading squads to play music "while the cheerleaders performed," *id.* ¶¶ 53–54, at halftime to support its argument that FHSAA discriminated against religious speech. However, such argument is unavailing. Allowing the public-address announcer to play a musical selection provided by the school for that school's cheerleaders during their half-time performance when the school does not have a band to play the musical selection does not transform a neutral Protocol into a biased one. Notably, if the Protocol included pre-game prayer in its list of allowed announcements, it would clearly violate the Establishment Clause of the First Amendment. *Santa Fe*, 530 U.S. at 301 (holding that school district's policy allowing student-led, student-initiated prayer at football games violated the Establishment Clause of the First Amendment); *Jager*, 862 F.2d at 830 (holding that practice of beginning

public high school football games with an invocation violated the Establishment Clause of the First Amendment).

FHSAA was also upholding its obligations under the First Amendment's Establishment Clause in not allowing what would amount to a state-sponsored prayer at a state-sponsored championship football game. Cambridge Christian was not denied the opportunity for prayer—in fact, Cambridge Christian acknowledges that it was allowed to offer a pre-game prayer, which it did so, publically, from mid-field. FHSAA did not infringe on Cambridge Christian's right to exercise its religious freedom and free speech rights.

FHSAA cannot be forced to change its Public-Address Protocol so that Cambridge Christian can broadcast a prayer. As the United States Supreme Court has made clear in *Santa Fe*, 530 U.S. 290 (2000), the enactment of a policy permitting state-sponsored prayer at football games violates the Establishment Clause. FHSAA's decision in this case demonstrates its commitment to upholding its responsibility to not entangle itself in the establishment of religion.

3.  Cambridge Christian's Alleged Free Speech and Free Exercise Claims do not Override the Establishment Clause.

The United States Supreme Court's holding in *Santa Fe*, in which the Court found that the enactment of a policy permitting student-sponsored prayer at state-sponsored football games over a public-address system violates the Establishment Clause, must be followed in this case. 530 U.S. 290 (2000). In *Santa Fe*, the practice of allowing a student council chaplain of a public high school in Texas to deliver a prayer over the public-address system before each varsity football game was challenged in district court as a violation of the Establishment Clause. *Id* at 294. During the pendency of the case in district court, the school

district adopted a policy that permitted, but did not require, student initiated prayer at home games. *Id.* The district court then modified that policy to permit "only nonsectarian, nonproselytizing prayer." *Id.* at 294. Specifically, the policy at issue "authorized two student elections, the first to determine whether 'invocations' should be delivered, and the second to select the spokesperson to deliver them." *Id.* at 297. The final policy before the Supreme Court referred also to "messages" and "statements," in addition to "invocations." *Id.* at 298.

In finding the Texas public school district's policy of permitting student-led, student-initiated prayer at state-sponsored football games to be constitutionally violative of the Establishment Clause, the Supreme Court observed that "[t]hese invocations are authorized by a government policy and take place on government property at government-sponsored school-related events." *Id.* at 302. Critical to its determination of unconstitutionality was that the public school district had "failed to divorce itself from the religious content in the invocations." *Id.* at 305. The Court went on to state:

> It has not succeeded in doing so, either by claiming that its policy is "'one of neutrality rather than endorsement'" or by characterizing the individual student as the "circuit-breaker" in the process. Contrary to the District's repeated assertions that it has adopted a "hands-off" approach to the pregame invocation, the realities of the situation plainly reveal that its policy involves both perceived and actual endorsement of religion. In this case, as we found in *Lee,* the "degree of school involvement" makes it clear that the pregame prayers bear "the imprint of the State and thus put school-age children who objected in an untenable position."

*Id.* at 305 (internal citations and footnotes omitted).

Similarly, a prayer, broadcast over the public-address system at an FHSAA-sponsored event, would undoubtedly appear to be authorized by the state. This would clearly violate both the letter and spirit of the Establishment Clause as the Court found in *Santa Fe*.

Cambridge Christian alleges that FHSAA's decision to not turn over the public-address system to Cambridge Christian to broadcast a pre-game prayer imposes a "content-based and viewpoint-based discrimination in contravention of the First Amendment." Doc. 8, ¶ 68. Cambridge Christian is wrong. The Supreme Court squarely rejected this identical argument from the Texas public school district in *Santa Fe* finding that the pre-game invocations were not "private speech." *Santa Fe*, 530 U.S. at 302. The *Santa Fe* Court stated:

> The actual or perceived endorsement of the message, moreover, is established by factors beyond just the text of the policy. Once the student speaker is selected and the message composed, the invocation is then delivered to a large audience assembled as part of a regularly scheduled, school-sponsored function conducted on school property. The message is broadcast over the school's public address system, which remains subject to the control of school officials.

*Id.* Thus, the Court emphasized that prayer over a public-address system at a state-sponsored football game "has the improper effect of coercing those present to participate in an act of religious worship." *Id.* at 313. So too is the case here.

The Supreme Court has also rejected arguments that a state suppresses a student's right to prayer over a public-address system simply because the state allows other types of speech to be broadcasted over the public-address system. In *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983), the court rejected a claim that the school had created a limited public forum in its school mail system despite the fact that it had allowed more speakers to address a much broader range of topics than the policy at issue. As

the *Perry* Court concluded, "selective access does not transform government property into a public forum." *Id.* at 47. FHSAA, under the terms of its Public-Address Protocol, is a state-actor. While its Public-Address Protocol allows school sponsored messages to be delivered by the public-address announcer over the public-address system, allowing such messages does not automatically transform the use of the public-address system into a public forum where any type of message could be broadcasted.

The Supreme Court also recognized in *Santa Fe* that prohibiting such a policy allowing school initiated prayer does not "impose a prohibition on all religious activity" at all state sponsored events. 530 U.S. at 313. The Court stated that there was "nothing in the Constitution . . . [that] prohibit[s] any public school student from voluntarily praying at any time before, during, or after the school day." *Id.* at 313. As was the case here, Cambridge Christian prayed with others in the center of the field before the game, clearly visible by the spectators. While Cambridge Christian complains that due to the size of the Stadium, their fans and onlookers were unable to hear their prayer without use of the public-address system, there was nothing prohibiting anyone present from participating in that time of prayer or prohibiting Cambridge Christian from picking a meeting place for their fans and onlookers to engage in a joint pre-game prayer.

Subsequent Eleventh Circuit case law that has addressed prayer at state-sponsored events is consistent with *Santa Fe*'s holding. *See Adler v. Duval County School Board*, 250 F.3d 1330 (11th Cir. 2001); *Chandler v. Siegelman*, 230 F.3d 1313 (11th Cir. 2000). Neither *Adler* nor *Chandler* compel the enlistment of state actors, like FHSAA, to engage in proselytization of audience members attending state-sponsored sporting events. In *Adler*, the

Eleventh Circuit held that the facially neutral policy permitting high school seniors to vote upon the delivery of a message by a student entirely of that student's choosing as part of a graduation ceremony did not violate the Establishment Clause. 250 F.3d at 1331–32. The policy did not call for an "invocation" or on its face sponsor prayer. "The total absence of state involvement in deciding whether there will be a graduation message, who will speak, or what the speaker may say combined with the student speaker's complete autonomy over the content of the message [means] that the message delivered, be it secular or sectarian or both, is not state-sponsored." *Id.* at 1342 (citation omitted). Unlike the school board in *Adler*, FHSAA controls the content of messages that are broadcast over the public-address system at the championship football games that it sponsors and the public-address announcer that uses public-address-system. "The ability to regulate the content of speech is a hallmark of state involvement." *Id.* at 1337. Thus, the facts in *Adler* are inapposite.

Additionally, there is nothing in *Chandler*'s holding, or dicta, that requires FHSAA to adopt a policy allowing prayer to be delivered over its public-address system at its events. Rather, *Chandler* helps to illuminate when religious speech in public schools, or at a state-sponsored event, is considered private and is therefore protected under the First Amendment. 230 F.3d at 1316. In *Chandler*, the Eleventh Circuit reviewed a policy which assumed that virtually any religious speech in schools was attributable to the state. Thus, the policy at issue in *Chandler* prohibited much more conduct and was thus much broader than the policy being challenged here. Essentially, the district court had enjoined the public school district from permitting any prayer in a public context at a school function. *Id.* For example, the policy at issue in *Chandler* allowed students to quietly engage in religious activity during non-

instructional times, as long as undue attention was not called to the activity, but that was the extent of the religious activity that was allowed under the policy. *Id.* at 1316 n.4. The *Chandler* Court held that the injunction was overboard because it equated all student religious speech in any public context at school with state speech.

The type of behavior at issue here does not prohibit student religious speech. In fact, the students prayed at mid-field before their game began. There is nothing in FHSAA's policies that prohibited such conduct. Instead, FHSAA's Public-Address Protocol is meant to prevent itself, as a state actor, from being entangled with students' religious speech by not allowing any person, other than the public-address announcer, to use the Stadium's public-address system. The *Chandler* Court recognized the central holding in *Santa Fe*—that "the Establishment Clause of the First Amendment prohibits a school district from taking affirmative steps to create a vehicle for prayer to be delivered at a school function." *Id.* at 1315. Here, FHSAA upheld its obligations under the First Amendment by not taking affirmative steps to deliver prayer at a state-sponsored function—exactly what the Establishment Clause prohibits.

### B.      Florida Constitutional Claims

As to Counts IV, V, and VI, Cambridge Christian does not state a claim for relief under the Article I, sections 3 and 4 of the Florida Constitution. Count IV alleges that because the FHSAA permitted secular messages to be delivered over the loudspeaker during the Championship Game, but denied Cambridge Christian's request to pray over the loudspeaker, it placed a substantial burden on Cambridge Christian's religious beliefs by not

allowing them to partake in prayer over the loudspeaker. Doc. 8, ¶¶ 95–97. Counts V and VI seek a declaratory judgment as to that effect.

The Florida Constitution provides that "[t]here shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof." Fla. Const. art. I, § 3. It also provides that "[n]o law shall be passed to restrain or abridge the liberty of speech or of the press." Fla. Const. art. I, § 4. "The Florida Constitution not only replicates the U.S. Constitution's Establishment Clause, but also imposes additional restrictions on state sponsorship of religious activities through the 'no aid' provision." *Atheists of Fla., Inc. v. City of Lakeland, Fla.*, 779 F. Supp. 2d 1330, 1341 (M.D. Fla. 2011); *see also Bush v. Holmes*, 886 So. 2d 340, 365 (Fla. DCA 2004) ("Florida courts have generally interpreted Florida's Free Exercise Clause as coequal to the federal clause."). Therefore, because Cambridge Christian cannot establish a claim under the federal Constitution, it cannot establish a claim under Florida's Constitution either and Counts IV, V, and VI should be dismissed.

### C. Florida Religious Freedom Restoration Act Claim (Count VII)

Cambridge Christian also fails to state a claim under Florida's Religious Freedom Restoration Act (the "Act"), codified as Florida Statute § 761.03 (Count VII). The Act provides as follows:

> (1) The government shall not substantially burden a person's exercise of religion . . . except that the government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
>
> (a) Is in furtherance of a compelling government interest; and

> (b) Is the least restrictive means of furthering that compelling governmental interest.

Fla. Stat. § 761.03; *Freeman v. Dep't of Highway Safety & Motor Vehicles*, 924 So. 2d 48, 54 (Fla. 5th DCA 2006) (stating that the plaintiff has the burden of showing both sincerity of religious belief and a substantial burden on his or her free exercise of religion). "[A] substantial burden on the free exercise of religion is one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires." *Warner v. City of Boca Raton*, 887 So. 2d 1023, 1033 (Fla. 2004). Cambridge Christian "bears the initial burden of showing that a regulation constitutes a substantial burden on his or her free exercise of religion." *Id.* at 1034.

Here, Cambridge Christian cannot demonstrate that the FHSAA placed a substantial burden on its exercise of religion because it never forbid it from engaging in prayer. It is undisputed that FHSAA did not interfere in Cambridge Christian's pre-game prayer at midfield. While FHSAA did not supply its public-address system for Cambridge Christian to broadcast its prayer in the Stadium, FHSAA did absolutely nothing to interfere with Cambridge Christian's right to engage in prayer. As the FHSAA has shown, the Establishment Clause and the Supreme Court case law interpreting that Clause justify the FHSAA's decision to decline to allow Cambridge Christian to use the public-address system at an FHSAA-sponsored championship game to broadcast its prayer. Cambridge Christian was not limited in any way from conducting a prayer at midfield without the use of the public-address system.

Because Cambridge Christian cannot demonstrate that the FHSAA placed a substantial burden on its exercise of religion, the Court should find that Cambridge Christian has failed to state a claim under Florida's Religious Freedom Restoration Act claim and dismiss Count VII of the Amended Complaint.

## CONCLUSION

WHEREFORE, the FHSAA respectfully requests that the Court: (1) grant the FHSAA's Motion to Dismiss Plaintiff's Verified Amended Complaint For Declaratory and Injunctive Relief; and (2) grant any other relief that the Court deems just and proper.

DATED: October 18, 2016.

Respectfully Submitted,

HOLLAND & KNIGHT LLP

/s/ Judith M. Mercier
Judith M. Mercier (FBN 32727)
judy.mercier@hklaw.com
Robin M. Nauman (FBN 105341)
robin.nauman@hklaw.com
200 S. Orange Ave., Suite 2600
Orlando, FL 32801
(407) 425-8500 (Telephone)
(407) 244-5288 (Facsimile)

CLAYTON-JOHNSTON, P.A
Leonard E. Ireland, Jr.
Florida Bar No. 104630
Primary: Lireland@Clayton-Johnston.com
Secondary: Tbrehm@Clayton-Johnston.com
18 Northwest 33rd Court
Gainesville, FL 32607
(352) 376-4694 (Telephone)
(352) 371-7366 (Facsimile)
Attorneys for FHSAA

*Counsel for Defendant Florida High*
*School Athletic Association, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 17, 2016, I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will electronically serve all counsel of record:

Adam Michael Foslid
Eliot Pedrosa
Stephanie Peral
Greenberg Traurig, LLP
333 SE 2nd Avenue
Suite 4400
Miami, FL 33131-2184
(305) 579-0553
Fax: (305) 579-0717
Email: foslida@gtlaw.com
Email: pedrosae@gtlaw.com
Email: perals@gtlaw.com

Hiram S. Sasser
Jeremiah G. Dys
Justin E. Butterfield
First Liberty Institute
2001 West Plano Parkway
Suite 1600
Plano, TX 75075-8608
(972) 941-4444
Fax: (972) 941-4457
Email: hsasser@firstliberty.org
Email: jdys@firstliberty.org
Email: jbutterfield@firstliberty.org

/s/ Judith M. Mercier
Judith M. Mercier