UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

---

CAMBRIDGE CHRISTIAN SCHOOL, INC.

       Plaintiff,

                                        Case No. 8:16-CV-02753

       v.

FLORIDA HIGH SCHOOL ATHLETIC
ASSOCIATION, INC.

       Defendant.

---

BRIEF AMICI CURIAE ON BEHALF OF THE FREEDOM FROM RELIGION
FOUNDATION AND CENTRAL FLORIDA FREETHOUGHT COMMUNITY OPPOSING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

---

The Freedom From Religion Foundation and Central Florida Freethought Community submit this brief *amici curiae* in opposition to Plaintiff Cambridge Christian School, Inc.'s Motion for Preliminary Injunction and Incorporated Memorandum of Law in Support Thereof (Doc. 9, the "Motion").

## INTRODUCTION

Cambridge Christian School has filed for a court order "enjoining Defendant Florida High School Athletic Association, Inc. from violating Cambridge Christian's rights to freedom of speech and free exercise of religion protected by the United States and Florida Constitutions." Motion, p.1. Because Cambridge Christian is unlikely to succeed on the merits, this Court must deny the motion. FHSAA has not violated any of Cambridge Christian's rights, including the right to free speech and free exercise of religion. Speech over the public address system at

FHSAA championship competitions is government speech under the First Amendment. FHSAA may conduct its own events as it wishes, including controlling what messages it sends over the public address system at championship football competitions that it hosts. In addition, the requested preliminary injunction by Cambridge Christian is adverse to the public interest because it would force FHSAA to endorse religion. Cambridge Christian's motion for a preliminary injunction must be denied.

## ARGUMENT

Cambridge Christian has failed to establish that it is likely to succeed on the merits. The speech in question is government speech, not private speech.[1] Thus, the Plaintiff does not have a right to commandeer the public address system at FHSAA championship competitions.

### I. Cambridge Christian cannot prevail on its Free Speech and Free Exercise claims.

In order to be granted a preliminary injunction, Cambridge Christian must demonstrate, among other factors, that "it has a substantial likelihood of success on the merits." *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000). A preliminary injunction "is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion" as to each prerequisite. *Id.* (*citing Canal Authority of State of Fla. V. Callaway,* 489 F.2d 567, 573 (5th Cir. 1974)). Cambridge Christian is unable to establish that there is a substantial likelihood it will prevail because any alleged speech or free exercise restriction is entirely permissible given the character of the FHSAA-controlled activity.

---

[1] Cambridge Christian's Motion seeks an injunction on the basis of First Amendment "Free Speech and Free Exercise claims." As Cambridge Christian did not independently discuss free exercise cases, the basis for its free exercise claims appears to be solely premised upon free speech cases. For that reason, this brief addresses both claims under free speech analysis.

A. **<u>Cambridge Christian has failed to establish that it has a right to manage the public address system at a state-sponsored athletic competition.</u>**

As a threshold matter, Cambridge Christian must first demonstrate that a right exists for a private party to speak using the public address system at FHSAA championship competitions. In its Motion, Cambridge Christian does not demonstrate, let alone discuss, its claimed right to speak over the public address system. Instead, Cambridge Christian addresses a second point of inquiry, which is whether FHSAA has engaged in viewpoint discrimination. However, any purported viewpoint discrimination by FHSAA regarding the public address system at championship events does not implicate the Free Speech Clause unless it restricts private speech within a public forum.

Where a government agency hosts its own event, it is not obligated to turn the public address system over to event attendees to deliver their own messages. If FHSAA is "engaging in [its] own expressive conduct, then the Free Speech Clause has no application." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). For example, an invited guest at a gubernatorial inauguration does not have any right to address the audience via a public address system. Naturally, the public address system at such events is under the management of those who control the event.

Cambridge Christian fails to cite any authority that establishes that teams that participate in state-run championship competitions have the right to disseminate their own messages over the public address system. Without legal authority or factual support establishing that a forum for private speakers was created by the FHSAA, Cambridge Christian cannot meet its initial burden of establishing that it has a right to speak via the public address system in the first place.

3

### B. Cambridge Christian cannot prevail on the merits because messages over the public address system at FHSAA events are government speech.

There is a crucial difference between government censorship of private speech in a public forum and government-control of its own message. It is well settled that the Free Speech Clause does not regulate government speech, as a government entity has the right to "speak for itself" and select the views that it wants to express. *Pleasant Grove City*, 555 U.S. at 467 (*citing Bd. of Regents of Univ. of Wis. System v. Southworth,* 529 U.S. 217, 229 (2000), *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 833 (1995)). "This freedom includes 'choosing not to speak' and 'speaking through the ... removal' of speech that the government disapproves." *Mech v. Sch. Bd. of Palm Beach Cty., Fla.,* 806 F.3d 1070, 1074 (11th Cir. 2015), *cert. denied,* (U.S. Oct. 3, 2016) (*quoting Downs v. L.A. Unified Sch. Dist.,* 228 F.3d 1003, 1012 (9th Cir.2000)).

Even if Cambridge Christian had alleged that a forum for private speech was created, it still would be unlikely to succeed on the merits. The Supreme Court previously addressed whether messages delivered over the public address system at government-sponsored football games are private speech. In *Santa Fe Indep. Sch. Dist. v. Doe*, the Supreme Court ruled that when speech occurs in a context that would lead an objective observer to believe a government entity is endorsing the speech, it "is not properly characterized as 'private speech.'" 530 U.S. 290, 310 (2000). This included student-led, student-initiated speech where a reasonable observer would perceive it as government speech.

The *Santa Fe* Court explicitly rejected an argument that the school district had created a forum for private speech: "Although the District relies heavily on this Court's cases addressing public forums, *e.g., Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700, it is clear that the District's pregame ceremony is not the type of forum discussed in such cases." *Id.* at 290-91. This was because the school district did not "open its

4

ceremony to indiscriminate use by the student body generally," and instead allowed one student to deliver the invocation, "which is subject to particular regulations that confine the content and topic of the student's message." *Id.* at 291.

The facts in this case even more strongly demonstrate that the messages delivered over the public address system at FHSAA championship events are government speech. Unlike the school system in *Santa Fe,* FHSAA has not even sought to allow a speaker to deliver an invocation or other private message. The public address system is not only closed to "indiscriminate use" by speakers, but also to all speakers other than the public-address announcer. Under its Public-Address Protocol, "the public-address announcer is the only one making statements and providing announcements over the public-address system and the system is not turned over to any school official or student." Declaration of Dr. Roger Dearing, Doc. 25-1, ¶ 17, cited as "Dearing Decl."

Statements by the public address announcer are attributable to the FHSAA, which directly controls what the public address announcer says. The public address announcer is considered a bench official for all FHSAA Championship Series events. Ex. A to Am. Comp., Doc. 8-1, pp. 14-15; Dearing Decl. ¶ 15. FHSAA's Public-Address Protocol limits the announcements to the FHSAA script for promotional announcements and a limited number of other announcements designated by FHSAA. *Id*. The script for the 2015 Division 2A Championship Game included numerous promotional announcements that identified the FHSAA. Dearing Decl. Ex. 1. Any observer of the game would understand that messages over the public address system carried the stamp of approval of FHSAA.

In addition to *Santa Fe,* the Supreme Court's recent government speech jurisprudence confirms that messages over the public address system constitute government speech. While

"[t]he Supreme Court has not articulated a precise test for separating government speech from private speech," the Court's decision in *Walker v. Tex. Div., Sons of Confederate Veterans*, 135 S. Ct. 2239, 2251 (2015), utilized three factors in concluding that specialty license plates for vehicles in Texas were government speech. *Mech*, 806 F.3d at 1074. These factors were also considered when the Court decided whether monuments on government property constitute government speech. *Summum*, 555 U.S. at 470–72. In *Walker,* the Court first considered history and whether the government historically used the particular media to speak. Second, the Court considered whether the message would be viewed as coming from the government. Third, it considered the extent of government control over the message.

The Eleventh Circuit Court of Appeals used these factors in analyzing whether a public school district's removal of a sponsor's banners on school fences violated the free speech clause. *Mech*, 806 F.3d 1070. These factors strongly support the conclusion that messages over the FHSAA public address system constitutes government speech.

1. **Historic practice**

First, while historic evidence was not presented in *Mech*, the court determined that its absence was not decisive. *Id.* at 1075-76. The court also noted "a particular medium may be government speech based solely on present-day circumstances." *Id.* (*citing Johanns v. Livestock Mktg. Ass'n,* 544 U.S. 550 (2005)).

While there is little evidence in the record related to the history of announcements at state championship competitions, any claimed prior instance of pre-game prayer at a 2012 FHSAA championship game was done without the permission the Executive Director of FHSAA. Dearing Decl. ¶ 12. In addition, Cambridge Christian has not offered any evidence that there is an historical practice of allowing school participants to commandeer the public address system at

state-sponsored athletic events.

### 2. Government sponsorship

As to the second factor, the court said that the banners were essentially "thank you" messages on behalf of the school, which included the school's initials and identified the sponsor as a "partner." *Mech,* 806 F.3d at 1077. The court said, "Observers would reasonably interpret them as 'conveying some message on the [school's] behalf.'" *Id.*, *quoting Walker,* 155 S.Ct. at 2252.

Messages delivered at FHSAA championship events would be viewed as coming from FHSAA. The 2015 Division 2A Championship Game was not hosted by one of the participating schools, but was held at Camping World Stadium, a venue chosen by FHSAA. Messages about the game were delivered by the designated FHSAA public address announcer, who is considered to be a bench official of the FHSAA. Ex. A to Am. Comp., p. 14. The script for the 2015 Division 2A Championship Game included numerous promotional announcements that identified the FHSAA. Dearing Decl. Ex. 1. A reasonable viewer of the game would understand that messages over the public address system carry the endorsement of the FHSAA.

### 3. Government control

Finally, the school's control in *Mech* over the messages "strongly suggests that the banners are government speech." 806 F.3d at 1078. Schools had control over the design of the banners, their size and location. *Id.* The banners were required to include the school's initials and the message "Partner in Excellence." While the bulk of information on the banners came from the sponsor, "'[t]he fact that private parties take part in the design and propagation of a message does not extinguish [its] governmental nature.'" *Id.* at 1078-79, *quoting Walker,* 135 S.Ct. at 2251.

The FHSAA has extensive control over the public address system. This includes limiting the speaker to a public-address announcer and limiting what she may say pursuant to the Public Address Protocol. Ex. A to Am. Comp., pp. 14-15. The announcer is tasked with maintaining neutrality and following the FHSAA script for promotional announcements. *Id.* Not only were the public announcements subject to FHSAA control, but numerous aspects of the game were controlled by detailed FHSAA policies and regulations. See Ex. A to Am. Comp.; Ex. B. to Am. Compl. This includes that the event "shall be conducted in accordance with the policies established by the Board of Directors and shall be under the direction and supervision of the FHSAA Office." Ex. A. to Am. Comp., p. 14.

In sum, the context of the game and FHSAA control puts this case squarely within the rulings of the Supreme Court in *Santa Fe* and the Eleventh Circuit in *Mech.* Cambridge Christian wants to force a state agency to promote its Christian message through a mechanism limited to conveying government speech. FHSAA has rightly declined to do so because it would violate the Establishment Clause of the First Amendment.

### II. A preliminary injunction requiring FHSAA to violate the Establishment Clause would be adverse to the public interest.

The party moving for injunctive relief has the burden to establish that "if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000). If Cambridge Christian is granted a preliminary injunction, thousands of families will be put in jeopardy of having their constitutional rights violated.

The extraordinary nature of the relief sought by Cambridge Christian is plain from its motion. Cambridge Christian broadly seeks to enjoin FHSAA "from violating Cambridge Christian's rights to freedom of speech and free exercise of religion protected by the United

8

States and Florida Constitutions." Motion, p.1. While Cambridge Christian has not explained what exactly FHSAA would be enjoined from doing, it appears that it seeks to require FHSAA to include religious messages at FHSAA championship games over the public address system if Cambridge Christian wishes for it to do so. This will cause unnecessary and irreparable harm to third parties, including non-Christian and non-religious attendees of FHSAA events.

The FHSAA, as a government entity, is prohibited from endorsing religion under the Establishment Clause. The Supreme Court has explained that "the prohibition against governmental endorsement of religion 'preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred.'" *Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 593 (1989). The goal of this endorsement test is to ensure that the government does not "appear to take a position on questions of religious belief." *Id*. at 594.

It is well settled by the Supreme Court that the government may not include prayer at activities for school-age children. *See Santa Fe,* 530 U.S. 290; *Lee v. Weisman*, 505 U.S. 577 (1992) (ruling prayers over the public address system at public school graduations are an impermissible establishment of religion); *Wallace v. Jaffree*, 472 U.S. 38 (1985) (overturning law requiring daily "period of silence not to exceed one minute . . . for meditation or daily prayer."); *Sch. Dist. Abington Twp. v. Schempp*, 374 U.S. 203 (1963) (declaring unconstitutional devotional Bible reading and recitation of the Lord's Prayer in public schools); *Engel v. Vitale*, 370 U.S. 421 (1962) (finding prayers in public schools unconstitutional).

Any students who participate in FHSAA athletic championship competitions or attend the competitions cannot be the subjects of publicly-broadcast prayer by FHSAA. This is especially concerning when public schools are participating in the events, but it remains true even when

9

private Christian schools participate. Under the Establishment Clause, the government may not endorse religion. There is no exception for when most members of the audience would be receptive to the religious message. FHSAA cannot be the mouthpiece of religious organizations or be used to gather event attendees to engage in a communal expression of Christian religious worship.

Even beyond the circumstances of this case, public school students have a right to attend athletic events that their school participates in without being coerced into prayer. FHSAA and individual public schools have an obligation to ensure that the First Amendment rights of students are protected. Thus, public schools and FHSAA cannot allow public prayer broadcasts at any FHSAA competitions that involve public school students.

Courts have protected parental and student rights where government actors have subjected public school students to prayers, regardless of whether the school itself is broadcasting the prayer. For example, a public school coach's participation in a team's prayer circle is unconstitutional. *Borden v. Sch. Dist. of the Township of East Brunswick*, 523 F.3d 153 (3rd Cir. 2008), *cert. denied*, 129 S. Ct. 1524 (2009) (declaring the coach's organization, participation, and leading of prayers before football games unconstitutional); *Doe v. Duncanville Indep. Sch. Dist.,* 70 F.3d 402 (5th Cir. 1995) (declaring basketball coach's participation in student prayer circles an unconstitutional endorsement of religion).

A public school has an affirmative duty to avoid advancing and endorsing religion, even if that endorsement does not occur on public school property. *See Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840 (7th Cir. 2012) (finding school district's practice of holding graduation ceremonies and related events at a Christian church violated Establishment Clause by conveying

message of religious endorsement that carried with it an aspect of coercion). This obligation to avoid endorsing religion extends to all athletic contests that are school-sponsored events.

It is no defense to the Establishment Clause to claim that publicly broadcast prayers at school events are merely "voluntary." The Supreme Court has highlighted the problem with forcing students to opt-out of such activities: "To say that a student must remain apart from the ceremony at the opening invocation and closing benediction is to risk compelling conformity in an environment analogous to the classroom setting, where we have said the risk of compulsion is especially high." *Lee*, 505 U.S. at 596 (citations omitted); *See also, Jager v. Douglas County Sch. Dist.*, 862 F.2d 825, 832 (11th Cir. 1989), *cert. denied*, 490 U.S. 1090 (1989) (". . . whether the complaining individual's presence was voluntary is not relevant to the Establishment Clause analysis . . . The Establishment Clause focuses on the constitutionality of the state action, not on the choices made by the complaining individual.").

In this case, an injunction would be adverse to the public interest because it would violate the rights of participants, spectators, and those who view the game broadcast. Allowing the religious messages to be broadcast by FHSAA forces an objecting student to violate his right of conscience, or else to "forfeit his …rights and benefits at the price of resisting conformance to state-sponsored religious practice." *Lee*, 505 U.S. at 596. This "[s]chool sponsorship of a religious message is impermissible because it sends the ancillary message to members of the audience who are nonadherents 'that they are outsiders, not full members of the political community and accompanying message to adherents that they are insiders, favored members of the political community.'" *Santa Fe,* 530 U.S. at 309-10 (citations omitted). An injunction would also force public schools to avoid participating in FHSAA championship games where the schools reasonably expect a prayer broadcast to take place.

**Conclusion**

Cambridge Christian's motion for a preliminary injunction must be denied. Messages over the FHSAA-controlled public address system constitute government speech. Cambridge Christian does not have a right to take over a public address system that is used for government speech and to use it for its own religious purposes. In addition, a preliminary injunction forcing FHSAA to endorse religion via the public address system would be adverse to the public interest.

Dated: November 23, 2016

                                                             Respectfully submitted,

                                                             Heather Morcroft, Esq.
                                                             *Attorney for Freedom From Religion Foundation*
                                                             *and Central Florida Freethought Community*

                                                             /s/ Heather Morcroft_____
                                                             Heather Morcroft
                                                             Florida Bar No. 709859
                                                             331 S. Wymore Rd.
                                                             Winter Park, FL 32789
                                                             407-325-0585
                                                             hmorcroft13@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on November 23, 2016, I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will electronically serve all counsel of record:

Adam Michael Foslid
Eliot Pedrosa
Stephanie Peral
Greenberg Traurig, LLP
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131-2184
(305) 579-0553
Email: foslida@gtlaw.com
Email: pedrosae@gtlaw.com
Email: perals@gtlaw.com

Hiram S. Sasser
Jeremiah G. Dys
Justin E. Butterfield
First Liberty Institute
2001 West Plano Parkway, Suite 1600
Plano, TX 75075-8608
(972) 941-4444
Email: hsasser@firstliberty.org
Email: jdys@firstliberty.org
Email: jbutterfield@firstliberty.org

Judith M. Mercier
Robin Michelle Nauman
Holland & Knight, LLP – Orlando
200 S Orange Ave , Ste 2600
Orlando, FL 32802
(407) 425-8500
Email: judy.mercier@hklaw.com
Email: robin.nauman@hklaw.com

Leonard E. Ireland, Jr.
Clayton-Johnston, PA
18 NW 33rd Ct
Gainesville, FL 32607
(352) 376-4694
Email: lireland@clayton-johnston.com

/s/ Heather Morcroft_____
Heather Morcroft