UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAMBRIDGE CHRISTIAN
SCHOOL, INC.,

    Plaintiff

v.                                            Case No. 8:16-cv-2753-CEH-AAS

FLORIDA HIGH SCHOOL
ATHLETIC ASSOCIATION, INC.,

    Defendant.

**DEFENDANT'S MOTION ON ENTITLEMENT TO ATTORNEY'S FEES AS TO PLAINTIFF'S FREE EXERCISE CLAIM[1]**

Pursuant to Local Rule 7.01(b), Defendant, the Florida High School Athletic Association, Inc. (the "FHSAA"), asks the Court to enter an order finding that the FHSAA is entitled to attorney's fees under 42 U.S.C. § 1988 as to Plaintiff's Free Exercise claim, with the amount of fees to be subsequently determined in accordance with Local Rule 7.01(c).

## BACKGROUND

The factual background of this action is set forth in the Court's Order of March 31, 2022. (Doc. 167.) Briefly, Plaintiff, Cambridge Christian School, Inc. ("CCS") was set to play University Christian School ("UCS") in the 2015 FHSAA Class 2A Football Championship Final (the "2015 Final") at the Citrus Bowl in Orlando, Florida. (*Id.* at 4–6.) Before the game, a representative of UCS asked for permission to broadcast a pre-game prayer using the stadium's PA system, and the

---

[1] In light of the Court's endorsed order deferring consideration (Doc. 175), Defendant understands that the Court will not consider this motion until after Plaintiff's appeal has been resolved.

FHSAA denied the request. (*Id.* at 6.) CCS's head of school, Tim Euler, later joined the request, which the FHSAA again denied. (*Id.*) However, the FHSAA permitted UCS and CCS to pray together at the middle of the field before the game. (*Id.*)

On September 27, 2016, CCS sued the FHSAA pursuant to 42 U.S.C. § 1983 for, among other things, violating the Free Exercise Clause of the U.S. Constitution. (Doc. 1; Doc. 8 ¶¶ 7, 61, 72(a)–(b).)

To support its Free Exercise claim, CCS alleged that, "[b]y long-standing tradition, [CCS] student-athletes, their parents and fans are led in prayer by a parent or student or member of the school faculty or administration before *every [CCS] sporting event.*" (Doc. 8 ¶ 16 (emphasis added).) CCS also alleged "[t]he opening prayer is given using the loudspeaker at all home games and *at away games when possible.*" (*Id.* (emphasis added); *see also id.* ¶ 17.) Similarly, CCS claimed that, "[a]s it had done in prior seasons and in accordance with its tradition, [CCS] opened each home regular season game *as well as away games, whenever possible*, with a prayer over the loudspeaker." (*Id.* ¶ 32 (emphasis added).)

In evaluating whether CCS had properly alleged a sincere religious belief for its Free Exercise claim, these allegations of a "long-standing tradition" of praying over a PA system before football games *whenever possible* were critical. (Doc. 73 at 57–61.) Specifically, the Eleventh Circuit ruled that, although CCS had not actually alleged a sincere religious belief in communal pregame prayer at football games, it could satisfy this element by pleading "a longstanding practice and tradition that is unmistakably closely tied to basic religious beliefs." (*Id.* at 61.) CCS's

2

allegation that it prayed at away games whenever possible thus allowed CCS's Free Exercise claim to advance past the pleading stage and into discovery. (*Id.*)

As the Court recently found, however, undisputed evidence—all of which CCS had in its possession before the lawsuit began—refutes CCS's allegations about a "long-standing tradition." (Doc. 8 ¶ 16.) "[C]ontrary to CCS's argument," the Court found, "communal prayer over a PA system is not the typical practice at events not hosted by CCS or not occurring on CCS's campus." (Doc. 167 at 33.) Rather, "[t]he evidence shows that when visiting non-Christian schools, CCS defers to the home school's tradition and CCS would not request prayer over the PA system." (*Id.*) "CCS routinely played away football games without pregame communal prayer over the PA system." (*Id.* at 33–34.) In fact, there was no evidence CCS had ever even asked to use a PA system for prayer outside of its home stadium. (*Id.*)

Perhaps most remarkable of all is that CCS's corporate deponent and current head of school, Shawn Minks, admitted that CCS's exercise of religion was not burdened when it did not pray over the PA system before away football games. (*Id.* at 34.) Mr. Euler, CCS's head of school in 2015, agreed, explaining that it was acceptable for CCS not to conduct a pregame prayer over the PA system before away games because "'that's honoring the facilities that you go to.'" (*Id.* at 33–34 (quoting Doc. 136-5 at 8).) CCS's cheer coach in 2015 was never even told she should be praying communally (i.e., with parents or fans, as opposed to just the students), and CCS's athletic director in 2015 saw no difference between the 2015 Final and the multiple

3

other games in 2015 before which CCS did not conduct a pre-game prayer over the PA system in 2015 "because it was not [CCS's] facility." (*Id.* at 34–35.)

Based on this evidence, the Court concluded that, "[w]ith a fully developed record . . . CCS's claim of using a loudspeaker to pray at away football games [was] contradicted by the record." (*Id.* at 36.) In reality, "CCS was fully willing to defer to the host school" such that, at the 2015 Final, "CCS's standard practice" would have been to defer to the FHSAA, and asking to use the PA system for pregame prayer at the 2015 Final "was actually inconsistent with [CCS's] routine." (*Id.*) Put simply, in the Court's words, "nothing about the facts of this case demonstrates that delivering the prayer over the PA system is part of CCS's sincerely held religious beliefs." (*Id.* at 37.) "To the contrary, it was acceptable and routine for CCS to defer to the host school for away games," and, "as stated by Mr. Minks, the inability to pray over the loudspeaker at away games did not burden CCS's right to exercise religious freedom." (*Id.*)

The Court thus granted summary judgment to the FHSAA on CCS's Free Exercise claim. (*Id.*) As set forth below, all of the evidence that led the Court to reject CCS's Free Exercise claim was known or available to CCS before it decided to assert this claim against the FHSAA in this action. CCS nevertheless used allegations directly contradicted by this evidence to escape dismissal of the Free Exercise claim and subject the FHSAA to full-blown litigation and discovery on this claim.

4

As set forth below, the FHSAA is therefore entitled to recover its reasonable attorney's fees as part of its costs under 42 U.S.C. § 1988(b) to the extent they were incurred because of CCS's decision to assert a baseless Free Exercise claim.

## LEGAL STANDARDS

Section 1988 provides that, "[i]n any action or proceeding to enforce a provision of section[ ] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Congress enacted section 1988 "to protect defendants from burdensome litigation having no legal or factual basis." *Fox v. Vice*, 563 U.S. 826, 833 (2011) (internal quotation marks omitted). A defendant can therefore recover fees under section 1988 by showing that the plaintiff asserted a claim that was frivolous, unreasonable, or without foundation. *Id.* Importantly, "the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous claims imposed." *Id.*

The Eleventh Circuit has rejected any rigid formula for applying this standard but has recognized that findings of frivolity have typically been sustained when the defendant prevailed on a motion for summary judgment and the plaintiff "did not to introduce any evidence to support [its] claims." *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir. 1985). The Eleventh Circuit listed the following factors as guidelines in determining whether fees are appropriate under section 1988(b): "(1) whether the plaintiff established a prima facie case;

5

(2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or had a full-blown trial on the merits." *Id.* However, these factors "are general guidelines only, not hard and fast rules," and determinations under section 1988(b) must be "made on a case-by-case basis." *Id.*; *see also Zivojinovich v. Ritz Carlton Hotel Co., LLC*, No. 2:05-cv-263, 2007 WL 9718626, at *2 (M.D. Fla. Aug. 6, 2007) (applying *Sullivan*).

## ARGUMENT

From the very beginning of this case, CCS knew it had no foundation for a Free Exercise claim against the FHSAA. Indeed, every piece of evidence on which the Court relied in concluding that "nothing about the facts of this case demonstrates that delivering the prayer over the PA system is part of CCS's sincerely held religious beliefs" was known or available CCS before the lawsuit began. (Doc. 167 at 37.) An award of attorney's fees is therefore justified, as set forth below.

### I. An award of attorney's fees is warranted under the Eleventh Circuit's guidance in *Sullivan*.

While *Sullivan* does not set out a precise formula, it is telling that all of the Eleventh Circuit's discussion in that case supports an award of fees here.

#### A. The FHSAA prevailed on summary judgment, and CCS had no evidence to support its Free Exercise claim.

As a preliminary matter, this is exactly the type of case in which findings of frivolity have typically been sustained. The Eleventh Circuit stated that such cases are usually "decided in the defendant's favor on a motion for summary judgment." *Sullivan*, 773 F.2d at 1189. That is the case here. (*See* Doc. 167.)

6

The Eleventh Circuit also stated that, "[i]n these cases, the plaintiffs did not introduce any evidence to support their claims." *Sullivan*, 773 F.2d at 1189. Again, that is precisely the case here. A plaintiff asserting a Free Exercise claim must establish (1) "a sincere religious belief," and (2) "that the government impermissibly burdened" that belief. (Doc. 167 at 31.) Here, the Court specifically found that Plaintiff failed to offer any evidence of either element. On "belief," the Court found CCS failed to establish this element because "there is **no evidence** to support that such pregame communal prayer is a long-standing practice and tradition for CCS." (Doc. 167 at 34 (emphasis added).) And on "burden," the Court likewise found that "**[n]o evidence** of burden exists here." (Doc. 167 at 37 (emphasis added).) Accordingly, this case is just like those "where findings of 'frivolity' have been sustained," and such a finding is appropriate here. *Sullivan*, 773 F.2d at 1189; *see also Zivojinovich*, 2007 WL 9718626, at \*2 ("Typically a case is found to be frivolous when a plaintiff does not introduce any evidence in support of their claim.").

Indeed, this case is even worse than the standard case in which frivolity is found because CCS not only failed to produce any evidence to support its Free Exercise claim, but it actually knew or had access to evidence refuting the claim before the lawsuit began. In reaching its decision, the Court recited evidence from CCS's

7

head of school in 2015,[2] its current head of school,[3] its former athletic director,[4] and its former cheer coach.[5] Thus, all CCS had to do to reach the same conclusion was *ask its own employees*—a step that would have been a part of any reasonable pre-filing inquiry. *See*, *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996) ("[A]n attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit."). CCS either failed to obtain or willfully ignored this evidence and then made directly contradictory allegations in its complaint.[6] (*See* Doc. 167 at 36 (finding "CCS's claim of using a loudspeaker to pray at away football games to be contradicted by the record.").)

---

[2] *E.g.*, Doc. 167 at 33–34 ("It was acceptable to CCS to not pray over the loudspeaker when it played an away game at a non-Christian school because, according to Former Head of School Tim Euler, 'that's honoring the facilities that you go to.'" (quoting Doc. 136-5 at 8)); *id.* at 34 ("Mr. Euler testified, CCS would defer to the host school when playing away games. Mr. Euler further testified he is not aware of CCS requesting to pray over the PA system at away games CCS played in 2015." (internal citation omitted)).

[3] *E.g.*, Doc. 167 at 33 ("Mr. Minks testified that CCS has not requested to pray over the PA system at away games when playing non-Christian schools."); *id.* at 34 ("Mr. Minks testified that CCS's right to exercise religious freedom has not been burdened by not praying over the PA system at away games."); *id.* at 37 ("No evidence of burden exists here, as confirmed by CCS's Head of School.").

[4] Doc. 167 at 35 ("The athletic director sees no difference in not praying over the PA system at away games with non-Christian schools and not praying over the PA system at the [2015 Final], where neither CCS nor UCS were the host team.").

[5] Doc. 167 at 34–35 ("The cheer coach states that she would pray with the cheerleaders, but no one ever told her she should be praying with the parents or fans.").

[6] CCS's failure to conform its allegations to evidence known or available to it is particularly troubling given that these false allegations are precisely those on which the Eleventh Circuit relied in allowing Plaintiff's Free Exercise claim to continue past the pleading stage. (*See* Doc. 167 at 35–36 (explaining that "the Eleventh Circuit accepted that the use of a loudspeaker was critical to CCS's tradition of communal prayer" based on allegations that this Court has now found were "contradicted" by the "fully developed record").

For these reasons, this case is a prime example of one in which the Court is justified in finding that the plaintiff asserted a claim that was frivolous, unreasonable, or without foundation. *See Sullivan*, 773 F.2d at 1189.

**B. Every *Sullivan* factor also supports an award of fees.**

Each of the factors identified in *Sullivan* is also satisfied here:

> **CCS failed to establish a *prima facie* case.**

First, as discussed above, the Court has specifically found that CCS had "no evidence" to establish either of the two elements of its Free Exercise claim. (Doc. 167 at 34, 37.) CCS thus failed to establish a *prima facie* case.

> **The FHSAA never offered to settle.**

Second, the fact that the FHSAA never made any settlement offer to CCS also supports a finding of frivolity under *Sullivan*. *See, e.g.*, *Perry v. Orange Cty.*, 341 F. Supp. 2d 1197, 1211 (M.D. Fla. 2004) ("The second *Sullivan* factor . . . also weighs in favor of defendants, as defendants never offered to settle.").

> **The Court dismissed the case prior to trial.**

Third, as noted above, this case—like most in which frivolousness is found—was resolved at the summary judgment stage. This also supports fees under section 1988(b). *See, e.g.*, *id.* ("[T]he third *Sullivan* factor . . . also favors the defendants, as the Court rendered summary judgment to defendants on all claims.").

\* \* \*

For these reasons, *everything* in *Sullivan* suggests that the Court should award fees to the FHSAA as to CCS's Free Exercise claim.

9

## II. Additional factors also support a fee award.

Inasmuch as *Sullivan* recognizes that additional factors may be relevant in applying section 1988(b), the FHSAA notes additional factors that further justify an award of fees here.

First, the FHSAA is a small, non-profit entity tasked with administering high school athletics for the benefit of student-athletes throughout Florida. (*See* Doc. 110-8 ¶ 3.) Defending frivolous lawsuits (funded by out-of-state special-interest law firms that use such lawsuits for fundraising purposes)[7] imposes substantial burdens on the FHSAA and drains it of its limited resources. This ultimately harms its member schools, student-athletes, their families, and everyone who participates in and enjoys high school athletics in this state. It is therefore particularly important to discourage those who would transform high school athletic fields into "culture war" battlefields by filing lawsuits that are aimed at garnering notoriety and stoking outrage rather than genuine efforts to vindicate meritorious claims.

Second, while the FHSAA limits its request for fees to those incurred as a result of CCS's baseless Free Exercise claim, the FHSAA notes that CCS litigated this case in an unreasonably burdensome manner by persistently focusing on types of speech and forums that were simply not at issue. Specifically, CCS sought extensive discovery and spent inordinate amounts of the parties' time addressing:

- sports other than football (including *hundreds* of PA scripts)[8];

---

[7] *See* Doc. 136-9 at 9:14–26; *see also* Doc. 136 at 33 n.16.
[8] CCS submitted *thirty-four volumes* of PA scripts with its motion for summary judgment, the vast majority of which were from sports other than football. (*See* Doc. 138-1.) CCS repeatedly

10

- banners, signs, and video boards in the stadium[9];

- speech by players and coaches[10]; and

- social media posts.[11]

As this Court explained, none of those categories of speech are relevant because they are not the type of speech under scrutiny in this lawsuit. (*See* Doc. 167 at 11 n.4; *id.* at 18–19.) CCS forced the FHSAA to expend its resources exploring and

---

made these non-football PA scripts the focal point of the litigation, including focusing extensively on an announcement about the shooting at Marjory Stoneman Douglas High School that was *never read at any football game* (*see* Doc. 137 at 24–25, ¶¶ 90–93) and citing moments of silence in more than 50 non-football PA scripts (*id.* at 23–24 & n.23), among many other examples.

CCS's inexplicable fixation on non-football PA scripts is also demonstrated by a discovery dispute in which CCS insisted on forcing the FHSAA to produce *every* PA script from *every* sport over more than a decade (*see* Doc. 99-11 at 8 ¶ 26) and, in attempting to justify this overly burdensome demand, pointed to purportedly critical passages from five PA scripts, *all* of which were disclosed in PA scripts the FHSAA had already produced, and *none* of which were from PA scripts for football games. (*See* Doc. 113 at 3 & n.1; Doc. 121 at 2–3 & nn.1–5.)

[9] Even though the Eleventh Circuit made clear that these signs and displays were irrelevant (*see* Doc. 73 at 28 n.3), CCS repeatedly expended substantial time and resources exploring and arguing about them (*see, e.g.*, Doc. 137 at 20–23, ¶¶ 77–85, 87–88; Doc. 142-91; Doc. 142-92; Doc. 142-93; Doc. 142-94; Doc. 142-95) and subjected the FHSAA's employees to extensive, pointless questioning about them. (*See, e.g.*, Doc. 139-1 at 131:18–132:6, 160:16–23; Doc. 139-3 at 136:19–21, 137:14–19, 140:18–141:12; Doc. 139-5 at 166:8-167:6, 168:4-11, 169:11-16; Doc. 139-6 at 36:12–38:14, 44:11–15, 45:10–15, 52:9–53:23, 57:4–59:25, 61:5–24, 72:1–73:20, 84:10–22, 85:2–20, 86:7–13, 87:18–89:12; Doc. 139-8 at 54:20–55:3, 57:4–60:5; 60:11–61:19, 72:16–73:1; Doc. 139-10 at 61:21–62:2; Doc. 139-11 at 110:19–111:2, 150:6–10, 151:3–5; 152:12–15; Doc. 139-13 at 47:12–19, 100:14–16, 116:16–22.)

[10] For inexplicable reasons, CCS demanded the production of hundreds of photographs (which could not possibly depict speech over the PA system) from football games (*see* Doc. 99-11 at 6–7, ¶¶ 10, 17) and subjected FHSAA employees to extensive questioning about school signs and banners shown in the pictures or other speech of players and coaches (*see, e.g.*, Doc. 139-5 at 177:9–180:13; Doc. 139-12 at 140:7–18, 180:2–8; Doc. 139-10 at 145:24–146:4).

[11] Although it has nothing whatsoever to do with speech at any sporting events (much less at football championship games), CCS demanded voluminous discovery, expended substantial time, and subjected the FHSAA's employees to extensive questioning on the FHSAA's social-media activity. (*See, e.g.*, Doc. 137 at 9–11, ¶¶ 38–39; Doc. 142-44; Doc. 142-45; Doc. 142-46; Doc. 142-47; Doc. 142-48; Doc. 142-49; Doc. 142-50; Doc. 142-51; *see also* Doc. 139-8 at 24:23-25:3, 35:1–37:16, 38:4–24, 39:4–41:11, 43:12–44:14, 56:23–57:14; Doc. 139-11 at 41:14–25, 92:13–25; Doc. 139-11 at 35:12–14, 74:8–19, 75:4–13.)

addressing arguments about these extraneous forms of speech despite the Eleventh Circuit's clear guidance that "message from corporate sponsors [that] lined the perimeter of the field and [that] were displayed on the 'Jumbotron' . . . *do not appear to be relevant* because [CCS] did not ask to pray by means of messages lining the field or by using the Jumbotron." (Doc. 73 at 28 n.3 (emphasis added).) Despite this straightforward reasoning, CCS persisted in expending substantial time and energy on mediums by which CCS "did not ask to pray," including the very same mediums the Eleventh Circuit specifically found irrelevant. (*Id.*)

This unrelenting pursuit of irrelevant discovery needlessly multiplied the proceedings and drastically increased the burdens of this lawsuit on the FHSAA. Again, the FHSAA seeks only those fees it incurred as a result of CCS's Free Exercise claim but asks the Court to consider the unreasonable manner in which CCS litigated as further justification for awarding these fees under section 1988(b).

### III. The FHSAA has satisfied the requirements for an order on entitlement under Local Rule 7.1(b).

Based on the foregoing, the FHSAA is entitled to an order finding that it is entitled to recover its fees imposed by CCS's Free Exercise claim under Local Rule 7.01(b). The FHSAA states that the judgment entered on March 31, 2022 (Doc. 168) and 42 U.S.C. § 1988(b) are the judgment and statute, respectively, entitling the FHSAA to the award. *See* M.D. Fla. L.R. 7.01(b)(1). The FHSAA further states that, at this time, a fair estimate of the amount of fees the FHSAA incurred by reason of CCS's Free Exercise claim is $85,954.89.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned counsel for the FHSAA certifies that Daniel Mahfood, counsel for the FHSAA, conferred with Eliot Pedrosa, counsel for Plaintiff, by way of e-mails exchanged on April 28, 2022, and that Plaintiff does not agree to the relief requested.

Dated: April 28, 2022	Respectfully submitted,

/s/*Judith M. Mercier*
Judith M. Mercier (FBN 32727)
judy.mercier@hklaw.com
Daniel Mahfood (FBN 94879)
daniel.mahfood@hklaw.com
HOLLAND & KNIGHT LLP
200 South Orange Avenue, Suite 2600
Orlando, Florida  32801
Telephone: (407) 425-8500
Facsimile:  (407) 244-5288

Leonard E. Ireland, Jr. (FBN 104630)
Lireland@Clayton-Johnson.com
Tbrehm@Clayton-Johnson.com
CLAYTON-JOHNSON, P.A.
18 Northwest 33rd Court
Gainesville, Florida  32607
Telephone: (352) 376-4694
Facsimile:  (352) 371-7366

*Counsel for Defendant, the Florida High School Athletic Association, Inc.*